IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BRUNSON ROBERTS                                                                                          PLAINTIFF
ADC #127841

v.                                            Case No. 4:24-cv-00332-KGB

DOES, *et al*.                                                                                             DEFENDANTS

## ORDER

Before the Court is United States Magistrate Judge Patricia S. Harris's Proposed Findings and Recommendation ("Recommendation") concluding that plaintiff Brunson Roberts is a "three-sriker" within the meaning of 28 U.S.C. § 1915(g) in both this case and in *Roberts v. Payne, et al*, Case No. 4:24-cv-604 ("*Roberts II*"), which the Court consolidated into this case (Dkt. No. 26; *Roberts II*, Dkt. No. 20). Mr. Roberts has filed objections to the Recommendation (Dkt. No. 41). Also before the Court is Mr. Roberts's motion for temporary restraining order or protective order, which Mr. Roberts filed after Judge Harris recommended dismissal of his case and after he filed his objections to the Recommendation (Dkt. No. 47-1). After a review of Mr. Roberts's objections and a *de novo* review of the record, the Court concludes that the Recommendation should be, and hereby is approved and adopted as this Court's findings in all respects and that the motion for temporary restraining order or protective order should be denied as moot (Dkt. Nos. 26; 47-1; *Roberts II*, Dkt. No. 20). The Court writes separately to discuss Mr. Roberts's relevant objections.[1]

---

[1] In his objections, Mr. Roberts makes statements about his legal property, racism, access to the courts, the Americans with Disabilities Act, and the removal of property in retaliation for filing grievances (Dkt. No. 41). The Court views these statements as irrelevant to the issues of imminent danger of serious physical injury discussed in Judge Harris's Recommendation, and the Court will not discuss these issues raised in Mr. Roberts's objections.

I. **Objections To Recommendation**

For his first objection to Judge Harris's Recommendation, Mr. Roberts contends that he is not a "three striker" within the meaning of the Prison Litigation Reform Act ("PLRA"). The PLRA provides that a prisoner cannot proceed *in forma pauperis* "if the prisoner has on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). The Court finds that Mr. Roberts is a "three-striker" within the meaning of the PLRA's three-strikes provision. *See Roberts v. Payne*, Case No. 4:21-cv-00441-LPR (E.D. Ark. Mar. 22, 2022) (dismissal for failure to state a claim upon which relief can be granted); *Roberts v. Wilkins, et al.*, Case No. 4:18-cv-00149-JM (E.D. Ark. Mar. 21, 2018) (same); *Roberts v. Hobbs, et al.*, Case No. 2:07-cv-00022-SWW (E.D. Ark. Mar. 21, 2007) (same); *see also Roberts v. Graves*, Case No. 4:22-cv-00492-JM-JTK, 2022 WL 2899213, at *2 (E.D. Ark. June 1, 2022), *report and recommendation adopted,* Case No. 4:22CV00492-JM-JTK, 2022 WL 2873229 (E.D. Ark. July 21, 2022) (citing *Gonzalez v. United States*, 23 F. 4th 788, 789-91 (8th Cir. 2022)) (finding Mr. Roberts is a three-striker within the meaning of the PLRA).

Mr. Roberts takes issue with the circumstances under which *Roberts v. Payne*, Case No. 4:21-cv-00441-LPR (E.D. Ark. Mar. 22, 2022), was dismissed. Mr. Roberts's case was dismissed with an Order stating that the dismissal of the action count as a "strike" within the meaning of 28 U.S.C. § 1915(g). *Id*. Mr. Roberts appealed to the Eighth Circuit Court of Appeals, which dismissed his appeal for lack of jurisdiction. *Roberts v. Payne*, Case No. 22-2409 (8th Cir. Aug. 1, 2022). The dismissal of *Roberts v. Payne*, Case No. 4:21-cv-00441-LPR, for failure to state a claim upon which relief can be granted counts as a strike, and the Court overrules Mr. Roberts's

objection to the Recommendation's finding that he is a "three striker" within the meaning of the PLRA.

For his second objection, Mr. Roberts asserts that the imminent danger exception applies to his case. Mr. Roberts may proceed *in forma pauperis* if he falls under the "imminent danger" exception to the three strikes rule. 28 U.S.C. § 1915(g) (providing that prisoners with three strikes should be granted permission to proceed *in forma pauperis* if they are "under imminent danger of serious physical injury"); *Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998) (explaining that the exception applies only if the prisoner is in imminent danger "at the time of filing" and that "[a]llegations that the prisoner has faced imminent danger in the past are insufficient"). The Eighth Circuit Court of Appeals has been reluctant to apply the imminent danger exception unless the alleged ongoing danger subjects the prisoner to risk of a truly serious physical injury. *Compare Ashley*, 147 F.3d at 717 (applying the imminent danger exception when a prisoner alleged that prison officials continued to place him near his enemies despite two prior stabbings), *with Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003) (refusing to apply the imminent danger exception when a plaintiff alleged that prison officials made him work outside in extreme weather conditions that did not result in any serious physical injuries).

The denial of appropriate medical care may, under certain circumstances, present an "imminent danger" sufficient to create an exception to the three-strikes policy and allow a prisoner to proceed *in forma pauperis*. *See Partin v. Harmon*, 113 Fed. App'x 717, 718 (8th Cir. 2004) (unpublished) (per curiam) (holding that plaintiff satisfied the imminent danger exception where he alleged that "he was exposed to raw sewage; denied treatment for tuberculosis, prostate cancer, and colon cancer; deprived of prosthetic support boots; denied medical care for an injured knee and ankle; and forced to work against medical restrictions"); *McAlphin v. Toney*, 281 F.3d 709,

3

711 (8th Cir. 2002) (holding that plaintiff's allegation that a spreading infection in his mouth constituted an imminent danger of serious physical injury);[2] *see also Brown v. Wolf*, 705 Fed. App'x 63, 66-67 (3d Cir. 2017) (holding that allegation by prisoner that the prison was "refusing him *any* medical treatment for his Hepatitis C, if true, puts [plaintiff] in imminent danger of serious physical injury.") (emphasis in original). However, the Eighth Circuit Court of Appeals determined in *Martin v. Shelton*, where the prisoner alleged that he was twice forced to work outside in inclement weather, once in cold weather without warm clothing and then later in hot weather, despite his blood pressure condition, that the prisoner's claim of imminent danger of serious physical injury had failed. 319 F.3d at 1050–51. The complaint included "conclusory assertions that defendants were trying to kill Martin by forcing him to work in extreme conditions despite his blood pressure condition." *Id*. at 1050. The Eighth Circuit determined that "[t]his type of general assertion is insufficient to invoke the exception to § 1915(g) absent specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Id*.

In his complaint, Mr. Roberts asserts that he has been denied adequate nutrition (Dkt. No. 15, at 10, 12, 16–17), that he has been denied colon cancer screening despite being told that it might explain his sudden weight loss (*Id*., at 18, 25–27), and that he has not been tested or treated for diabetes (*Id*., at 18, 25–27). Mr. Roberts also asserts that he has untreated hypertension (*Id*., at 25–26) and that Shyecia Martin, R.N., denied him medical treatment on April 12, 2024, and falsified his medical records to make it appear that he was seen for sick call (Dkt. No. 15, at 15; 24, at 1). Mr. Roberts further claims that Melveta Henry denied him medical care on November

---

[2] The concurrence in *McAlphin* "tend[ed] to doubt that McAlphin's allegations of a mouth infection constitute[d] a 'serious physical injury.'" *McAlphin*, 281 F.3d at 711 (Bye, J., concurring) (citing 28 U.S.C. § 1915(g)).

15, 2023; that Jasmine Siah denied him medical care for scoliosis on December 15, 2022; that Lonnell Seamster was indifferent to medical needs for asthma, eczema, and acid reflux and took away his medications on unspecified dates; and that Andrea Culclager improperly answered his grievances (Dkt. No. 24, at 1–2).

In a motion for injunctive relief filed in *Roberts II* on July 18, 2024, Mr. Roberts claims that he lost 45 pounds, he was recently diagnosed as a diabetic, and medical staff denied him "'any' and 'all' medical treatment" and falsified his medical records. *Roberts II*, Doc. No. 4, at 1. In his request for relief, Mr. Roberts requests that he be provided with proper nutrition. *Id*. at 2. He also alleges that defendants are trying to place him in heat conditions that cause him to become sick due to his asthma medications. *Id*. In his motion for preliminary injunction filed in this case on November 12, 2024, Mr. Roberts alleges that he was denied coffee, milk, and eggs for breakfast on November 1, 2024, and that he has not received coffee or milk for over a year (Doc. No. 20, at 1).

As part of his objections, Mr. Roberts makes claims related to weight loss. Related to these claims, he states that he is in an "18-month program" that denies commissary privileges on level one (Dkt. No. 41, at 5). Mr. Roberts further asserts that there is a step-down program that allows him to purchase his own food (Dkt. No. 41, at 5). Mr. Roberts claims that "what is being served as food is detrimental to my my [sic] systemic blood flow to my heart" (Dkt. No. 41, at 5). Mr. Roberts further asserts that the 18-month program is not mandatory but is causing the underlying problems he is experiencing (*Id*.). According to Mr. Roberts's allegations, he can move out of level one of the program and obtain the ability to purchase food from the commissary in the future.

Mr. Roberts asserts that he has not been tested or treated for diabetes. However, the record indicates that he is receiving a diabetic diet prescribed by a doctor (*See Roberts II*, Dkt. No. 7, at

5

51, attaching a grievance from Mr. Roberts complaining that his "diabetic sandwich" that is part of his "diabetic diet authorized by a physician" is being sent to the wrong cellblock).  Mr. Roberts asserts weight loss, but he offers no further information regarding his actual weight before or after the weight loss.  Based on the record before the Court, Mr. Roberts's allegations asserting that he is not receiving a proper diet do not suffice to meet Mr. Roberts's burden to show that he is in imminent danger of serious physical injury.

Mr. Roberts also maintains that he is in imminent danger of serious physical injury due to untreated coronary heart disease.  However, Mr. Roberts has not come forward with a medical diagnosis of coronary heart disease.  Mr. Roberts points to lab testing showing hemoglobin below normal and red blood cell of 4.01.  There is nothing in the record to show that this puts Mr. Roberts at risk for "coronary heart disease" or "cardiac arrest" as he asserts in his objections (Dkt. No. 41, at 4).

Mr. Roberts contends that has debilitating pain and is not being prescribed pain medication, but included in the record is a prescription to Mr. Roberts for Meloxicam (*See Roberts II*, Dkt. No. 7, at 31).

Mr. Roberts asserts on several occasions throughout his filings that nurses falsified records to show that he received medical care when he did not and claims that this shows a pattern of misconduct (Dkt. No. 41, at 2–3).  Mr. Roberts points to one occasion when, according to grievance records, Mr. Roberts's grievance was found to be with merit because he was seen in sick call for musculoskeletal complaints in his lower back, feeling dizzy, and sudden weight loss, but nurses failed to record his vital signs; he was refunded his co-payment for the visit to the infirmary (Dkt. No. 41, at 11).  The single incident alleging failure of medical personnel to take vital signs, even if true, does not suffice to show a pattern of failure to provide medical care to Mr. Roberts.

Based on the Court's review of the entire record, it appears that Mr. Roberts has been receiving food and medical treatment from defendants but that Mr. Roberts may not be receiving the amount and type of food and medical treatment that he desires or believes is necessary.[3] The Court cannot conclude based upon the record before it that defendants are placing Mr. Roberts at risk of imminent danger of serious physical injury.

On April 7, 2025, after filing his objections, Mr. Roberts filed an affidavit with the Court dated April 5, 2025, asserting that on March 31, 2025, he "fell out due to a[n] overdose of fintanol [sic] in my chicken spaghetti." (*Id*.). Mr. Roberts fails to identify the person he contends put drugs in his food. Mr. Roberts asserts that the administration at the Varner Maximum Security Unit responded to the incident and to Mr. Roberts's allegation that someone is trying to kill him by poisoning his food by placing Mr. Roberts in punitive isolation and designating one officer to feed him all his meals (*Id*.). In the affidavit, Mr. Roberts also asserts that medical staff are denying him all his "meds," but Mr. Roberts does not say who is denying him his medications or for how long (*Id*.). The Court cannot conclude based on the affidavit that any of the defendants in this case are placing Mr. Roberts in imminent danger of serious physical injury.

## II.    Temporary Restraining Order Or Protective Order

On April 28, 2025, over a year after Mr. Roberts filed his complaint in this case, Mr. Roberts filed another motion for temporary restraining order or protective order (Dkt. No. 47-1). In the motion, Mr. Roberts asserts that he is being denied personal mail going out to family and friends, phone privileges, legal property, medical care for diabetes, and commissary and that his

---

[3] In a filing dated April 28, 2025, Mr. Roberts complains that because he cannot go to the commissary he is "subjected to only be able to eat what the State Provides" and that "[w]ithout the option in food choices it limits Plaintiff to only be able to deal with exactly the food they give me . . . and if I do not accept the tray then I must starve." (Dkt. No. 48, at 4-5).

7

food is being messed with to make him sick (Dkt. No. 47-1, ¶ 3). Some of the allegations made by Mr. Roberts in the motion appear to be the same as those raised by Mr. Roberts in his objections to the Recommendation. Those allegations related to his medical care, commissary, and his food are addressed above. To the extent that Mr. Roberts raises new allegations in his motion for temporary restraining order or protective order that pertain to events that occurred in April 2025 and resulted in Mr. Roberts receiving a disciplinary, those events occurred well after the filing of this lawsuit and are unrelated to the claims raised in his complaint or amended complaint in this case and in *Roberts II*. Mr. Roberts must raise those claims in a new complaint. *See Wishon v. Gammon*, 978 F.2d 446, 448 (8th Cir. 1992) (determining district court did not abuse its discretion in denying plaintiff inmate's motion to amend his complaint when he sought to add a new claim unrelated to those previously raised, and he could raise the new claim in a different lawsuit). Accordingly, the Court denies as moot Mr. Roberts's motion for temporary restraining order or protective order (Dkt. No. 47-1).

### III. Conclusion

After a review of Mr. Roberts's objections and a *de novo* review of the record, the Court agrees with Judge Harris's Recommendation that Mr. Roberts's conclusory allegations of being denied adequate nutrition and medical treatment with very little factual support do not establish that Mr. Roberts is in imminent danger of serious physical injury. It is therefore ordered that:

1. The Court concludes that the Recommendation should be, and hereby is, approved and adopted as this Court's findings in all respects (Dkt. No. 26; *Roberts II*, Dkt. No. 20).

2. The Court denies without prejudice Mr. Roberts's motion for leave to proceed *in forma pauperis* (Dkt. No. 14).

    3.    Mr. Roberts shall have 30 days to reopen this case by paying the $405.00 filing fee in full and filing a motion to reopen the case.

    4.    The Court overrules Mr. Roberts's objections to the Recommendation (Dkt. No. 41).

    5.    The Court denies as moot Mr. Roberts's pending motions for injunctive relief (Dkt. Nos. 20; 47-1; *Roberts II*, Dkt. No. 4).

    6.    The Clerk of the Court is directed to file this Order in *Roberts II*.

So ordered this 6th day of May, 2025.

*[signature]*

Kristine G. Baker
Chief United States District Judge